IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ANTHONY EVANS,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>LEROY KIRKEGARD,<br>TOM WILSON,<br><br>　　　　　Defendants. | Cause No. CV-13-75-DWM-RKS<br><br>FINDINGS AND RECOMMENDATIONS OF<br>UNITED STATES MAGISTRATE JUDGE |

## I. Synopsis

Plaintiff Anthony Evans ("Mr. Evans") filed an Amended Complaint on March 4, 2014, (Doc. 8), after it was found that the allegations in his original Complaint were so vague that the Complaint failed to state a claim upon which relief could be granted. (Doc. 7.) Mr. Evans has failed to correct the deficiencies identified in his original complaint. Mr. Evans's allegations are again so vague that the Amended Complaint fails to state a claim upon which relief may be granted. This case should be dismissed.

## II. Jurisdiction

Mr. Evans is a prisoner proceeding pro se in this action under 42 U.S.C. § 1983. Jurisdiction exists over this civil action given its basis in the laws of the

1

United States. 28 U.S.C. § 1331. Venue is proper because Mr. Evans currently resides within the exterior boundaries of the Helena division of the District of Montana. 28 U.S.C. § 1391. As Mr. Evans is a prisoner proceeding pro se and in forma pauperis, the case has been referred to a magistrate judge for all pretrial purposes. LOCAL R. 72.2(a)(1).

### III. Status

Mr. Evans filed previously a Complaint (Doc. 2) that the Court reviewed before service, as it must for complaints filed by prisoners. 28 U.S.C. §§ 1915, 1915A. The Complaint could not be served because it failed to state a claim upon which relief could be granted. Mr. Evans was granted leave to amend the Complaint to attempt to correct the deficiencies. (Doc. 7.)

Mr. Evans has filed an Amended Complaint which must also be reviewed before it is served on the Defendants to determine if the allegations are frivolous, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915, 1915A. If so, the Amended Complaint must be dismissed. 28 U.S.C. § 1915(e)(2). This is the review.

### IV. Standards

"A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than

2

formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation omitted); *cf.* FED.R.CIV.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

**A. Pleading Standard**

A complaint must allege sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility is less than probability, but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Pleadings that constitute nothing more than conclusions are not entitled to the presumption of truth and may be disregarded. *Id.* at 679. A plaintiff must plead the essential elements of a claim to avoid dismissal for failure to state a claim. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir.1982).

**B. Leave to Amend**

Leave to amend a complaint should be given freely "when justice so requires." FED.R.CIV.P. 15. "Leave to amend need not be given if a complaint, as amended, would be subject to dismissal." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir.1989).

## C. 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). Section 1983 does not offer any substantive rights, but provides procedural protections for federal rights granted elsewhere. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To prove liability under § 1983, a plaintiff must: (1) show that a person acting under color of state law engaged in some type of conduct, which (2) deprived the plaintiff of some right, privilege or immunity secured by the Constitution or federal statutory law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overturned on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

## D. RLUIPA

Under RLUIPA, a government may not impose a substantial burden on the religious exercise of a confined person unless the government establishes that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc–1(a)(1)–(2). This "compelling government interest" and "least restrictive means" test have replaced the prior "legitimate penological interest" test. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir.2005) (citing 42 U.S.C. § 2000cc–1(a)). Under its own terms, RLUIPA must be

"construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." *Id.* at 995 (citing 42 U.S.C. § 2000cc–3 (g)).

For the purposes of RLUIPA, a "substantial burden" is a burden that imposes a "significantly great restriction or onus" upon a prisoner's exercise of religion. *Warsoldier*, 418 F.3d at 995 (internal citation omitted). RLUIPA expands significantly the reach of religious protection to include "any exercise of religion, whether or not compelled by or central to, a system of religious belief." *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 986 (9th Cir.2008). A "religious exercise" is "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). The inmate bears the burden of establishing prima facie that RLUIPA has been violated, and that his religious exercise has been substantially burdened. *Warsoldier*, 418 F.3d at 994 (citing 42 U.S.C. § 2000cc–2(b)).

**D. Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment protects prisoners from intentional discrimination on the basis of their religion, *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). The Equal Protection clause entitles each prisoner to a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners. *Shakur*, 514 F.3d at 891. Prison

5

officials cannot discriminate against particular religions. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Mr. Evans, as the plaintiff, must prove initially that a protected classification formed the basis for the denial of a benefit to him, while the benefit was conferred upon another. *See Snowden v. Hughes*, 321 U.S. 1, 8 (1944).

To prove that a regulation has been administered or enforced discriminatorily, a plaintiff must show more than the fact that a benefit was denied to one person while given to another. *Id.* A plaintiff may establish a violation of the Constitutional right to equal protection only if the plaintiff can prove an *intent* to discriminate. *Id.* Even when a disproportionate impact exists, a plaintiff must prove that a discriminatory animus formed the basis for that impact in order to establish an equal protection violation. *See Washington v. Davis*, 426 U.S. 229, 239 (1976). The challenged regulation will not be found to violate the Equal Protection Clause unless the plaintiff demonstrates that the action was motivated, at least in part, by an "invidious discriminatory purpose." *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

### V. Factual Allegations

For purposes of this review, the allegations in the Amended Complaint are presumed to be true so long as they have some factual support. Unsupported legal

6

conclusions are disregarded. *See Iqbal*, 556 U.S.at 678.  Mr. Evans makes two claims.  Each will be recounted in turn.

**A. Storage and Purchase Privileges**

Mr. Evans alleges first that the Defendants have instituted a "total ban" on storage privileges at the Montana State Prison religious activities center for properly censored Christian Identity religious media, and foreclosed purchase privileges for Christian Identity religious through the religious activities coordinator and Inmate Welfare Fund. (Doc. 8 at 3.)

Mr. Evans acknowledges that "storing Christian Identity religious media . . . may not be a 'religious exercise' per se." (Doc. 8 at 4.)  Mr. Evans fails to identify any religious exercise that arises from the storage or the purchase of religious media.  (*See generally* Doc. 8.)  Mr. Evans further fails to identify how the denial of storage or purchase privileges burdens his religious exercise. (*See generally* Doc. 8.)

Mr. Evans contends nonetheless that because "prison officials are obligated to treat religions in an even-handed manner," the Equal Protection clause obligates the defendants "to allow storage privileges . . . and allow such religious media to be purchased." (Doc. 8 at 4, 5.)  Mr. Evans fails to identify any federal right to storage privileges or to purchases privileges.  (*See generally* Doc. 8.)   Mr. Evans alleges further that "Mr. Wilson has previously stated that Christian Identity is not

a legitimate religion." (Doc. 8 at 4.) Mr. Wilson fails to identify, however, any discriminatory intent against Christian Identity adherents, or that such intent formed the basis for any actions. (*See generally* Doc. 8.)

**B. Group Worship**

Mr. Evans alleges next that the Defendants have refused to allow Christian Identity adherents to "to have group worship . . . to utilize Christian Identity religious media." (Doc. 8 at 5-6.)

Mr. Evans claims that group worship constitutes "the religious exercise that arises from utilizing Christian Identity religious media while worshipping with other [non-Christian Identity] Christian prisoners." (Doc. 8 at 7.) Mr. Evans fails to explain specifically this religious exercise. (*See generally* Doc. 8.) Without further explanation from Mr. Evans, it appears that he has described the "religious practice" of viewing Christian Identity media in the midst of non-Christian Identity practitioners. (*See generally* Doc. 8.) Mr. Evans claims that the defendants' "substantially burdened Mr. Evans'[s] right to group worship." (Doc. 8 at 7.) Mr. Evans also fails to identify specifically how the denial of this group worship burdens substantially his religious exercise. (*See generally* Doc. 8.)

Mr. Evans claims that the defendants permit other religious groups "to have group worship services at the R[eligious ]A[ctivities ]C[enter] and [to] utilize religious media." (Doc. 7 at 8.) Mr. Evans points to an Eighth Circuit case that

analyzed a prisoner's claim under RLUIPA for the proposition that "[a]n outright ban on group worship constitutes a substantial burden." (Doc. 7 at 8.) Mr. Evans fails to identify, however, any federal right to group worship. (*See generally* Doc. 8.) Mr. Evans further claims that the defendants "prohibit Mr. Evans from group worship services" . . . "because Mr. Evans is a[] Christian Identity adherent." (Doc. 7 at 8-9.) Mr. Evans fails to explain the basis for his statement that the prohibition exists because he is a Christian Identity adherent. (*See generally* Doc. 8.)

## VI. Analysis

### A. RLUIPA

RLUIPA prohibits prison officials from imposing "substantial burdens" on religious exercise unless there exists a compelling governmental interest, and the burden is the least restrictive means of satisfying that interest. *Alvarez v. Hill*, 518 F.3d 1152, 1156 (9th Cir.2008). At this screening stage, Mr. Evans must allege facts that plausibly show that the challenged policy and the practices that it engenders impose a substantial burden on the exercise of his religious beliefs. *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1125 (9th Cir. 2013). Pleaded facts must be specific enough to allow a reasonable inference to be drawn both that Mr. Evans has a religious exercise that the Defendants impinged upon, and that the Defendants are responsible for the substantial burden on the exercise of Mr. Evans's religious beliefs. *See Iqbal*, 556 U.S.at 678.

The question thus is whether Mr. Evans has stated a specific, cognizable claim under RLUIPA. It will be evaluated whether Mr. Evans has identified specifically (1) the religious exercise that the Defendants impinged upon, and (2) whether the regulation substantially burdened Mr. Evans's religious exercise. *Greene*, 513 F.3d at 987 ("In any RLUIPA claim, we must begin by identifying the 'religious exercise' allegedly impinged upon. Next, we must ask whether the prison regulation at issue 'substantially burdens' that religious exercise.")

**1. Storage and Purchase of Materials for Christian Identity Worship**

Mr. Evans alleges that the Defendants have instituted a "total ban" on storage privileges at the Montana State Prison RAC for properly censored Christian Identity religious media, and also refused to allow the purchase of Christian Identity media through the Religious Activities coordinator and Inmate Welfare Fund. (Doc. 8 at 3-5.) To state a claim for relief under RLUIPA, Mr. Evans must have identified specifically the religious exercise that the Defendants have infringed upon, and whether the total ban and refusal substantially burdens Mr. Evans's religious exercise. *Greene*, 513 F.3d at 987

Mr. Evans fails to identify a religious practice that stems from either the storage of properly censored Christian Identity religious media or the purchase of Christian Identity media through the Religious Activities coordinator and Inmate Welfare Fund. *Greene*, 513 F.3d at 987. Mr. Evans even concedes that "storing

Christian Identity religious media at the R[eligious ]A[ctivities ]C[enter] and purchasing it through the Religious Activities coordinator and Inmate Welfare Fund may not be a 'religious exercise' per se . . . ." (Doc. 8 at 4.) This concession forecloses relief under RLUIPA, because RLUIPA can address only the substantial burden of a religious exercise. *Greene*, 513 F.3d at 987. Without an identified "religious exercise," the claim cannot proceed under RLUIPA. 42 U.S.C. § 2000cc–5(7)(A). This claim should be dismissed.

**2. Group Worship for Christian Identity Followers**

Mr. Evans next claims that "'group worship' is the religious exercise that arises from utilizing Christian Identity religious media while worshipping with other Christian prisoners." (Doc. 8 at 7.) Mr. Evans states that the Defendants have "substantially burdened Mr. Evans'[s] right to group worship . . . ." (Doc. 8 at 7.) Mr. Evans fails to explain specifically how "utilizing Christian Identity religious media" while "worshipping with other Christian prisoners," (doc. 8 at 7) who apparently do not identify with Christian Identity, is "an[] exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). Mr. Evans has failed to plead facts specific enough to allow a reasonable inference that Mr. Evans has a religious exercise that the Defendants impinged upon. *Iqbal*, 556 U.S. at 678.

Given the allegations in the Complaint, it is not clear what, if any, "religious exercise" was impinged upon. Without an identified "religious exercise," the claim cannot proceed under RLUIPA. 42 U.S.C. § 2000cc–5(7)(A). This claim should be dismissed.

**B. Equal Protection**

Mr. Evans's allegations that the Defendants have instituted a "total ban" on storage privileges for properly censored Christian Identity religious media, have refused to allow the purchase of Christian Identity media through the Religious Activities coordinator and Inmate Welfare Fund, and have prevented Mr. Evans from engaging in group worship fail to allege any religious accommodation to which Mr. Evans has a federal right. Equal Protection claims require a showing that the state has denied the equal protection of a specific law or regulation to an individual. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Mr. Evans has failed to identify any right, statutory or constitutional, to store or to purchase religious media, or to congregate in the midst of non-adherent religious groups. The Court's research found no such right. In the absence of such a right, there can be no denial of "the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Mr. Evans's claims lack "facial plausibility." *Iqbal*, 556 U.S. at 678 (2009). This claim should be dismissed.

## VII. Conclusion

The Amended Complaint does not state a claim on which relief can be granted. Mr. Evans received the standards for stating a federal claim in the Court's prior order. Mr. Evans was given an opportunity to correct the deficiencies in his pleading and he failed to do so. Leave to amend need not be given if an amended complaint would be subject to dismissal. *Kayport Package Exp.*, 885 F.2d at 538.The Amended Complaint should be dismissed.

### A. Certification Regarding Appeal

The Federal Rules of Appellate Procedure provide as follows:

> [A] party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization, unless:
> (A) the district court-before or after the notice of appeal is filed- certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding;

FED.R.APP.P. 24(a)(3)(A).

Analogously, 28 U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). A plaintiff satisfies the "good faith" requirement if he or she seeks review of any issue that is "not frivolous." *Gardner v. Pogue*,

558 F.2d 548, 551 (9th Cir. 1977) (*quoting Coppedge*, 369 U.S. at 445). For purposes of section 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 327 (1989); *Franklin v. Murphy*, 745 F.2d 1221, 1225 (9th Cir. 1984).

The Amended Complaint is frivolous as it plainly lacks arguable substance in law or in fact. No reasonable person could suppose an appeal would have merit. The Court should certify that any appeal of this matter would not be taken in good faith.

**B. "Strike" under 28 U.S.C. § 1915(g)**

The Prison Litigation Reform Act prohibits prisoners from bringing in forma pauperis civil actions if the prisoner has brought three or more actions in federal court that were dismissed for frivolousness, maliciousness, or for failure to state a claim. 28 U.S.C. § 1915(g). Mr. Evans's pleadings are frivolous and fail to state a claim upon which relief may be granted. The dismissal of this case should constitute a strike under 28 U.S.C. §1915(g).

**C. Address Changes**

At all times during the pendency of this action, Mr. Evans SHALL IMMEDIATELY ADVISE the Court of any change of address and its effective date. Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to FED.R.CIV.P. 41(b).

It is **RECOMMENDED**:

    1. Mr. Evans's Amended Complaint (Doc. 7) should be dismissed.

    2. The Clerk of Court should be directed to close this matter and enter judgment pursuant to FED.R.CIV.P. 58.

    3. The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to FED.R.APP.P. 24(a)(3)(A) that any appeal of this decision would not be taken in good faith. The record makes plain the instant Complaint is frivolous as it lacks arguable substance in law or fact.

    4. The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g). Mr. Evans failed to state a claim upon which relief may be granted and his claims are frivolous.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Evans may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[1] 28 U.S.C. § 636. Failure

---

[1] As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under FED.R.CIV.P. 6(d). Therefore, three (3) days are added after the period would otherwise expire.

to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to FED.R.APP.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 25th day of March, 2014.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge